IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:08CR92 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | SENTENCING MEMORANDUM |
| ADAM SCHMID, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court for sentencing. This sentencing memorandum supplements findings made on the record at sentencing hearings on August 11, 2009, and August 14, 2009.

**I. FACTS**

On October 22, 2008, defendant Adam Schmid was charged with receipt or distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count I), and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (Count II). Filing No. 1, Indictment. Section 2252(a)(4)(B) makes it a crime to knowingly possess child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252(a)(4)(2). Under the statute, the crime of possession of child pornography, charged in Count II, carries a maximum sentence of ten years for a first offender, with no minimum sentence. 18 U.S.C. § 2252(b)(1).[1]  Pursuant to a plea agreement, Schmid entered a plea of guilty to the possession charge. Filing No. 62, Plea Agreement. In the plea agreement, the parties

---

[1] In contrast, the crime of receipt and distribution of child pornography in interstate commerce carries a mandatory minimum sentence of five years and a maximum of twenty years. 18 U.S.C. § 2252A(b)(1).

agreed to a sentence of 60 months pursuant to Fed. R. Crim. P. 11(c)(1)(C).  Filing No. 62 at 2.

The court accepted Schmid's plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated the defendant's sentence under the United States Sentencing Guidelines ("the Guidelines").  Filing No. 59.  The Probation Office based its outline of the offense conduct on the prosecutor's version of events and on the discovery file.  Filing No. 68, PSR at 4-5.  Schmid was identified as a subscriber to a commercial child pornography Web site in an investigation by Immigration and Customs Enforcement (ICE).  *Id.* at 4.  A federal search warrant was executed at his house and two computer hard drive towers, one laptop computer, four external hard drives and various computer storage media were seized.  *Id.* at 5.  Law enforcement agents found approximately 1,788 still images of child pornography and 81 videos of child pornography on the seized hard drives.   *Id.* at 5.  Most of the images contained pictures of children under 12 and two qualified as depicting sadistic or masochistic conduct.  *Id.*

The Probation Office determined that U.S.S.G. § 2G2.2(a)(1) provided a base offense level of 18 for the defendant's violation.  It found Schmid accountable for a total of 7,863 images of child pornography (representing eighty-one videos, calculated under the Guidelines as seventy-five images per video, and 1,788 still images).  *Id.* at 5, 7.  It also found the following upward adjustments were applicable:  a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor); a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for possession of material that portrays

sadistic or masochistic conduct or other depictions of violence);[2] a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer); and a five-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of more than 600 images). *Id.* at 6-7. The application of these enhancements resulted in an adjusted offense level of 31. *Id.* at 7. The Probation Office then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 28. *Id.* Schmid has no criminal history points and his criminal history category is I. At offense level 28 and criminal history category I, Schmid's Guidelines range of imprisonment is 78 to 97 months. The government adopted the findings in the PSR. Filing No. 64.

At the sentencing hearing on August 12, 2009, the defendant expressed dissatisfaction with the plea agreement and his attorney. He stated that he understood that he had agreed to a five-year negotiable sentence, not to a five-year sentence that could not be reduced. The court continued the hearing in order to review the transcript of the plea colloquy. The court's review shows that the defendant stated on the record at the plea hearing that he understood his sentence would be five years. At the resumption of the sentencing hearing on August 14, 2009, the defendant urged the court to adhere to the plea agreement.

---

[2]The PSR states that the discovery file indicated that the defendant subscribed to a Web site that contained at least two videos showing adult penetration of prepubescent females. Under 8th Circuit case law, this conduct qualifies as sadistic. *United States v. Diaz*, 368 F.3d 991, 992 (8th Cir. 2004); *United States v. Belflower*, 390 F.3d 560, 562 (8th Cir. 2004) (per curiam) (stating that images depicting an adult penetrating or attempting to penetrate a minor are per se sadistic because "[s]uch images portray conduct sufficient to presume the infliction of mental or physical coercion or abuse upon a minor.").

## II.  LAW

Plea agreements are governed by Rule 11(c), which makes some types of agreements between the government and a defendant binding upon the district court and others not.  Fed. R. Crim. P. 11.  Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure provides that a "plea agreement may specify that an attorney for the government will . . . (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case."  Fed. R. Crim. P. 11(c)(1)(C); *United States v. Scurlark*, 560 F.3d 839, 842 (8th Cir. 2009).  The Rule "further declares that 'such a recommendation or request binds the court once the court accepts the plea agreement.'" *Id.* (*quoting* Fed. R. Crim. P. 11(c)(4)).  Accordingly, "[a] plea agreement under Rule 11(c)(1)(C), like all plea agreements, is binding on both the government and the defendant, but Rule 11(c)(1)(C) plea agreements are unique in that they are also binding on the court after the court accepts the agreement." *United States v. Kling*, 516 F.3d 702, 704 (8th Cir. 2008).

The Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005).  In *Booker,* the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment, but that the constitutional violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory. *Id.* at 226, 245.  *Booker*, however, did not address the sentencing discretion of the district court in accepting Rule 11(c)(1)(C) agreements. *Kling*, 516 F.3d at 704 (finding that *Booker* does not invalidate Rule 11(c)(1)(C) plea agreements).  "Rule 11(c)(1)(C) plea agreements remain permissible post-Booker." *Id.*

Courts are not obligated to accept plea agreements and have discretion to reject those which are deemed involuntary or unfair. *Id.*; *see* Fed. R. Crim. P. 11(b)(2) ("Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)."). If the court does not accept the agreement, the court is not bound to sentence the defendant by its terms. *Kling*, 516 F.3d at 704 (noting that district courts "had this power pre-*Booker* and still do.").

After *Booker*, a sentencing court commits procedural error if it "fail [s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, —, 128 S. Ct. 586, 597 (2007); *see also United States v. Smith*, 573 F.3d 639, 658-59 (8th Cir. 2009). A sentence imposed under a Rule 11(c)(1)(C) plea arises directly from the agreement itself, not from the Guidelines, even though the court can and should consult the Guidelines in deciding whether to accept the plea. *See United States v. Scurlock*, 560 F.3d 839, 842 (8th Cir. 2009).

In 18 U.S.C. § 3553, the Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Kimbrough*, 552 U.S. 85, —, 128 S. Ct. 558, 570 (2007) (*quoting* 18 U.S.C. § 3553(a)). The statute further provides that "in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and

5

circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id. (quoting* 18 U.S.C. § 3553(a)). Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at —, 128 S. Ct. at 596-97.

Congress established the Sentencing Commission ("the Commission") "to formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570; *Rita v. United States,* 551 U.S. at 349-50. When operating within that institutional role, the Sentencing Commission "has the capacity courts lack" and can "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). The Commission developed and used data on past practices and recidivism in formulating the Guidelines. *See* United States Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 72-73 (November 2004), available at http:// www.ussc.gov/ 15_ year/ 15_ year_ study_ full.pdf ("Fifteen-Year Assessment"); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567; *Gall,* 552 U.S. at —, 128 S. Ct. at 594 (noting

that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. Fifteen-Year Assessment at 14. Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range. *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574.

However, when Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on any identified empirical approach, Guidelines sentencing ranges are a less reliable appraisal of a fair sentence and are not entitled to as much deference. *See, e.g., Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574-75 (*quoting Rita*, 551 U.S. at 350, 127 S. Ct. at 2465); *see also Gall,* 552 U.S. at — n.2, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence); *United States v. O'Connor*, 567 F.3d 395, 398 (8th Cir. 2009) (assuming without deciding that *Kimbrough's* holding extends beyond the 100-to-1 crack/powder cocaine disparity). The Commission departed from the empirical approach in setting offense levels for child abuse crimes and sexual offenses for policy reasons and because Congress enacted statutory mandatory minimum sentences and issued other directives. Fifteen-Year Assessment at 15, 72-73; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567. The Guidelines for child exploitation offenses were not developed under the statistical approach, but were promulgated, for the most part, in response to statutory directives. *See, e.g.,* U.S.S.G. App. C, Vol. I, Amends. 537 & 538 (Nov. 1, 1996); Vol. II, amend. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amend. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Comm'n, *Report to Congress: Sex Offenses Against*

*Children, Findings and Recommendations Regarding Federal Penalties* (June 1996) ("Sex Offenses Against Children Report"); *see also* United States v. Huffstatler, 561 F.3d 694, 696 (7th Cir. 2009) (noting that "the child-pornography sentencing guidelines, like the drug guidelines at issue in *Kimbrough* are atypical in that they were not based on the Sentencing Commission's nationwide empirical study of criminal sentencing."). Over the years, Congress has directed the Sentencing Commission many times to amend existing Guidelines for sexual crimes against children so that more substantial penalties may be imposed.³ *See,* e.g., Pub. L. 101-647, 1990 S. 3266, Title III, § 323(a), (b), 104 Stat. 4789, 4819 (Nov. 29, 1990); Proceedings and Debates of the 102nd Congress, First Session, 137 Cong. Rec. H6736-02, H6736, H6741, 1991 WL 187764, *H6737, *H6741 (Cong. Rec.) (1991); U.S.S.G. App. C., Vol. I, Amends. 537 & 538 (November 1996) (implementing the Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774 (1995) (enacted)); 141 Cong. Rec. H4122-01, 1995 WL 143978 (1995); Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 61 Fed. Reg. 20,306, 20,307-08, 1996 WL 223875 (F.R.) (May 6, 1996) (to be codified at U.S.S.G. §§ 2G2.1, 2G2.2, 2G2.4); Sex Offenses Against Children Report, Executive Summary at i; U.S.S.G. App C, Vol. I, amend. 537; U.S.S.G. App. C, Vol. II, amend. 592 (Nov. 1, 2000); PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th

---

³At the inception of the Guidelines, it was not a crime to simply possess child pornography and the Guidelines covered only the "transporting, receiving, or trafficking" of child pornography. *See* U.S.S.G. § 2G2.2 (1987). The acts of possessing child pornography and possessing with intent to sell were later criminalized as part of the Crime Control Act of 1990. *See* Pub. L. 101-647, § 323(b), 104 Stat. 4789, 4818-19 (1990); United States v. Vig, 167 F.3d 443, 449 (8th Cir. 1999) (noting the expansion of Congress's enforcement authority as a result of the criminalization of the mere possession of child pornography).

Cong., 117 Stat. 650, 653 (2003) (enacted); U.S.S.G. App. C, Vol. II, amends. 649 (April 30, 2003) & 664 (Nov. 1, 2004).

The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils.  *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251.  In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity."  U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000).  The primary victims of the crime of possession of pornography are the exploited children.  *See* United States v. Rugh, 968 F.2d 750, 756 (8th Cir. 1992).

In its report to Congress, the Sentencing Commission noted that "[i]t appears that a significant portion of child pornography offenders have a criminal history that involves the sexual abuse and exploitation of children" and recommended that Congress increase statutory maximum sentences for production of child pornography and double the statutory maximum for offenders with prior convictions for sex abuse crimes.  Sex Offenses Against Children Report, executive summary at ii.  The amendments and recommendations were intended to "ensure lengthy incarceration of repeat sex offenders who show the greatest risk of victimizing children."  *Id*. at i.  In compiling and analyzing its statistics, however, the Sentencing Commission noted that federal prosecutions for child sex offenses represented

a small percentage of the total number of such cases nationwide, because the vast majority of sex offenses were prosecuted in state court. *Id*. The Commission stated that "[p]enalties for sex offenses against children have been increased in recent years and are quite severe," but noted that amendment may "be appropriate to increase sentences for the most dangerous offenders." *Id.*

The fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice. Fifteen-Year Assessment at 23-24. The Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge." United States Sentencing Comm'n, *Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 14-15 (August 1991) *(*"Mand. Min. Rep't"), available at http://www.ussc.gov/reports. The Commission also acknowledges that "[s]ince the power to determine the charge of conviction rests exclusively with the prosecution for the 85 percent of the cases that do not proceed to trial, mandatory minimums transfer sentencing power from the court to the prosecution" and "to the extent that prosecutorial discretion is exercised with preference to some and not to others," disparity is reintroduced into the system. Mand. Min. Rep't at 1; *see also* Fifteen-Year Assessment at 89 (noting that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply").

### III. ANALYSIS

#### A. Guideline Calculation

The court will first calculate the defendant's sentence under the advisory Guidelines. The court adopts the findings in the PSR. The court finds that Schmid's base offense level under the Guidelines is 18. *See* U.S.S.G. § 2G2.2(a)(1). The court further finds the following adjustments are applicable: a two-level increase for possession of material containing a prepubescent minor under U.S.S.G. § 2G2.2(b)(2); a four-level increase for possession of material that portrays sadistic or masochistic conduct or other depictions of violence under U.S.S.G. § 2G2.2(b)(4);[4] a two-level increase for use of a computer under U.S.S.G. § 2G2.2(b)(6); and a five-level increase for possession of more than 600 images under U.S.S.G. § 2G2.2(b)(7). The application of these enhancements results in an adjusted offense level of 31. Defendant is entitled to a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 28. Schmid's criminal history category is I, resulting in a Guidelines range of imprisonment is 78 (six and one-half years) to 97 (almost nine years) months.

#### B. Sentence - Plea Agreement

The parties stipulated to a sentence of 60 months in their plea agreement. That sentence is binding on the court if the plea agreement is accepted. The court finds that

---

[4] The PSR states that the discovery file indicated that the defendant subscribed to a Web site that contained at least two videos showing adult penetration of prepubescent females. Under 8th Circuit case law, this conduct qualifies as sadistic. *United States v. Diaz*, 368 F.3d 991, 992 (8th Cir. 2004); *United States v. Belflower*, 390 F.3d 560, 562 (8th Cir. 2004) (per curiam) (stating that images depicting an adult penetrating or attempting to penetrate a minor are per se sadistic because "[s]uch images portray conduct sufficient to presume the infliction of mental or physical coercion or abuse upon a minor.").

the defendant's plea was knowing and voluntary and the terms of the plea agreement are fair.  Accordingly, the court will accept the plea agreement and it is binding on the court.

The court has considered the Sentencing Guidelines in making this decision.  Both the government and the defendant made concessions to reach the agreement.  The government agreed to dismiss the charge that carried a mandatory minimum sentence of five years.  As a result of the plea, the defendant will serve a shorter sentence than the low end of the recommended Guidelines range.  Avoiding a trial at which voluminous explicit evidence would have been presented to the jury is a benefit to the defendant and the government benefits by avoiding the time and expense of trial.

The court has also considered the Section 3553 factors and finds that the sentence agreed to by the parties results in a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing.  In considering the nature and circumstances of the offense, the court first finds possession of child pornography is a serious offense.  It is one of a class of crimes that involve commercial sex acts, sexual exploitation of minors, and obscenity covered under part G of the Guidelines. Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or pornography production, as well as trafficking in pornography. Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children. Possession of pornography, however, is the least serious of the crimes on the continuum of conduct—from possession to distribution to production to predatory abuse—that exploit children.  One who possesses child pornography is considerably less culpable than one who produces or distributes the exploitative materials and a possessor is a marginal player

in the overall child exploitation scheme. Although, the number of files or images a defendant possesses may not correspond to any actual or perceived position of power within a distribution hierarchy, the court notes that the defendant in this case possessed a large number of images, including some involving disturbing acts of sexual abuse against children.

As noted, Schmid was originally charged with a violation of both 18 U.S.C. § 2252A(a)(2), receipt or distribution of possession of child pornography, and § 2252(a)(4)(B), possession of child pornography. This case illustrates the dilemma facing defendants charged with both section 2252A and section 2252 offenses. In the context of this and other Internet child pornography crimes, there is no principled distinction between receipt of child pornography and possession of child pornography.[5] To obtain pornography via the Internet, it is generally necessary to receive the pornography in order to possess it. Thus, both charges are oftentimes supported by the same conduct, exposing the defendant to a mandatory five-year sentence if he risks proceeding to trial on both charges. Under the plea agreement, the government agreed to dismiss the more serious charge, which carried a mandatory minimum sentence of five years. The benefit to a defendant in agreeing to a sentence equal to the mandatory minimum of five-years is not illusory, however, because the defendant avoids the risk of exposure to an even longer sentence under the Guidelines for the charge that does not carry a mandatory minimum. Absent some showing of prosecutorial misconduct or other impropriety, the court will honor a knowing and voluntary plea agreement. The defendant was represented by counsel in

---

[5]Notably, no charges of distribution are involved in this case.

these proceedings and he was exposed to a potentially long sentence, as the result of numerous Guideline enhancements, had he opted to go to trial.

The sentence is also fair in consideration of the defendant's history and characteristics. The record shows that Schmid is thirty-four years old and served in the United States Marine Corps from 1997 to 2006, when he was honorably discharged. He served in Iraq and Afghanistan. He is married and has a six-year-old son. Until his arrest he was employed as a computer technician. He is a high school graduate and has completed two years of post-secondary education at the Colorado Institute of Art in Denver, Colorado. He has no criminal history and there is no evidence that he was ever a pedophile, sexual predator or child abuser, or that he will be one in the future.

In addition, the court has consulted and taken into account, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines and policy statements. The court has used the Guidelines calculation as its initial starting point. However, in view of the fact that the child pornography Guidelines are driven by statute, rather than grounded in any scientific, statistical, or empirical method, the advice imparted in the Sentencing Guidelines is outside the Sentencing Commission's area of expertise and need not be accorded a high degree of deference by the court. The court finds that the Guidelines ranges of imprisonment are somewhat out of proportion to the defendant's culpability in this case. Under the circumstances, a sentence of 60 months under the plea agreement, rather than the low-end Guidelines sentence of 78 months, is fair and appropriate.

In making this determination, the court has also considered the need to avoid sentencing disparities. The statutes criminalizing the possession of child pornography, as

amended over time, and as interpreted by the Sentencing Commission in formulating Guidelines, are clearly aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters. The history of legislative enactments in this area reflects Congressional concern with the use of computers to lure or entice children into sex acts. Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims. This case does not involve such conduct. The legislative history also shows Congressional concern with dangerous child abusers and repeat offenders. Enhancements of increasing severity for quantity and for recidivism are aimed at the most dangerous of child pornography offenders. Again, Schmid does not fall within that class. There is no evidence that he has, or is likely to, abuse children. On the culpability spectrum of increasingly serious child exploitation offenses, Schmid is an example of a defendant who deserves a sentence at the low end of the statutory range.

The court finds that a shorter sentence than the Guidelines recommend for this defendant will respect the distinction between the defendant's culpability and the far greater culpability of an actual predator or abuser. The sentence of a purveyor of child pornography should be proportional to and significantly lower than a sentence for an exploitative crime that involves acts of abuse by a defendant. The court finds that a sentence of five years, as stipulated in the plea agreement, will provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. Five years is a significant term of imprisonment for a first offender. The public will be adequately protected by a term of supervised release with

strict conditions and by the provision of alcohol and sex offender treatment to the defendant. The mere fact of Schmid's prosecution and conviction will deter others from engaging in this sort of conduct. The deterrence value of any longer sentence would be marginal. Given that the benefit to society of a longer period of incarceration would be negligible, any benefit is outweighed by the potential harm a longer sentence would have on Schmid's ability to return to society as a productive citizen.

A Judgment and Commitment and Statement of Reasons in accordance with this Sentencing Memorandum will issue this date.

DATED this 11th day of September, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.